Ramirez as petitioner versus Merrick Garland, respondent. And for petitioner we have Kevin Hollins. Yes, good afternoon your honor. May it please the court. Yeah go ahead. I was just gonna say for respondent we have Mr. Kelly. Each side That's 15 minutes argument allotted. So for the appellant, if you will, the petitioner, if you want to make rebuttal argument please try to stop before all that time's used up. Please proceed. Thank you your honor. And may it please the court. My name is Kevin Hollins from the Northwest Immigrant Rights Project and I serve as the petitioner, Miguel Ramirez. I would like to reserve three minutes of my time for rebuttal. The agency failed to review Mr. Ramirez's Convention Against Torture claim in accordance with the regulations governing CAT and this court's precedents. The agency first erred by failing to consider all relevant evidence of torture as required by regulation. The IJ acknowledged that extrajudicial killings remain a concern in El Salvador and that suspected gang members are often the victims. He also found that the Salvadoran government would identify Mr. Ramirez as a suspected gang member. However, the IJ failed to connect the logical dots and find that Mr. Ramirez would be at high risk of extrajudicial killing. The IJ instead required any evidence of extrajudicial killing to be linked to the Decree 717 monitoring and reporting requirements and when he found no connection, he found that Mr. Ramirez faced no particularized risk. The IJ erred by limiting Mr. Ramirez's claim to torture directly resulting from the monitoring and reporting requirements. Those requirements are one component of the Salvadoran government's war against suspected gang members, but the IJ failed to understand or consider how the rest of the Decree 717 screening process would put Mr. Ramirez in grave danger. He failed to consider that as soon as the Salvadoran government inspects Mr. Ramirez's tattoos, reviews his immigration file, and labels him a suspected gang member, he will be immediately at risk of being targeted regardless of whether he is subject to formal requirements. He similarly ignored evidence showing that Mr. Ramirez will be a much more likely target than current or former gang members living in El Salvador, who may or may not be known to law enforcement. For example, the IJ failed to consider evidence that individuals just like Mr. Ramirez have been killed shortly after being deported. Mr. Ramirez, Dr. Hallett, Sonia Luna Guzman, and researcher Elizabeth Kennedy all provided such examples. The IJ similarly failed to consider Elizabeth Kennedy's finding that deportees are ten times more likely to be murdered than the average male living in a Salvadoran city. The IJ improperly narrowed the scope of Mr. Ramirez's claim, and as a result, it failed to consider all evidence of torture and erroneously found that Mr. Ramirez does not face a particularized risk of torture. Well, this standard requires more than a very daunting standard, if I understand correctly. I mean, do you understand differently? Correct, Your Honor. No, but the, but the, uh, but the judge here dismissed the evidence on the basis of finding it generalized as opposed to particular. Well, let's get down to the, I mean, the standard, as I understand it, is is more likely than not he will experience torture if returned to his I've looked at the evidence. I've looked at the testimony of Dr. Hallett, for example. I've looked at what the IJ wrote, and I see things like the United Nations Human Rights Council report says there are an estimated 60,000 gang members. Not sure if that would include a, a former gang member, as your client would, would present himself. If so, the number would be higher, but let's just start with the 60,000. That means more likely than not tortured. That requires a lot of people, and yet the numbers that are offered up, which are tragic, are the numbers like a thousand or a few hundred people killed at the hands of police. That's not going to make it to more likely than not, as I count it. What supports the proposition that evidence compels the conclusion that your client will more likely than not suffer torture if returned to his home country? Because the IJ did not consider the particularized risk factor. Don't tell me what the IJ did not consider. Please point to me what you think the evidence compelled consideration that adds up to more likely than not. I just, I have trouble getting to a more likely than not figure. A thousand people being killed by the police, that's a real problem. But if there are 60,000 gang members, that's like, what, 2% not 50 plus percent. So what tells me that the risk, the evidence compels the conclusion that more likely than not he'll be tortured? Mr. Ramirez is not similarly situated to the 60,000, though. He is going to be coming in as a deportee. He's going to be intensely screened by the government. And so as a government that is fighting this war against suspected gang members, and police who have political pressure to show results in the form of violence and death against gang members, he's going to be a much more likely target and a much more vulnerable target. Well, you just used a number saying 10 times more likely than I think the average male, but it's not like 5% of the average males are tortured each year and you'd need 10 times 5% to get to 50%. So to tell me that he's more likely still doesn't get to the point where the evidence compels a conclusion more likely than not. I'm not, I'm not adverse to trying to find a way to get there, but I don't know. I don't know. I don't know. And so I'm asking you to help me to see if there is evidence that would support a conclusion like that. Well, it is an individualized inquiry, Your Honor. And so in this case, not only does Mr. Ramirez have the threat of being killed by the government as they collect his information as he comes through, but he also has been threatened 11 times by the 18th Street gang. And so the court, this court can consider, and the agency below should have considered the aggregate risk of all of those together. Well, ours is the evidence must compel. You can say the agency didn't consider, but that really is a euphemism for the agency didn't agree with the arguments. The agency can reach its own conclusion and we have to be persuaded that the agency didn't permit that conclusion. So what is it that's so overwhelming about the evidence? I mean, to be honest, I looked for and did not find evidence that 50% plus is a risk faced by a returning gang member. I would like in this case to Parada the sessions, Your Honor, where the government found, or this court looked at what the IJ's observations were and found evidence in the record that Salvadoran security forces were torturing people on a regular basis. And I would say that there's the same kind of compelling evidence here where it's two experts, it's the State Department report, it's the United Nations report that Your Honor mentioned, all point to significant problems and a significant risk to suspected gang members. Mr. Ramirez then is not only part of the class of suspected gang members, but a even smaller group that is more likely to be targeted because he's a deportee with a criminal record. And for those reasons, he's going to be at even greater risk than any of those 60,000. Well, Parada is an asylum case and your client has a tougher burden because he's limited to the cat relief, which is where you get the more likely than not standard. Our case law suggests that asylum, the well-founded fear of persecution standard is a 10% type standard. This is a 50% plus type standard. So I know what the law says in Parada. I don't see anything there that would support, strike that, would compel a conclusion by the agency in this case that the risk faced by your client is as great as it needs to be to qualify for the relief you're seeking. As in Parada and as in Aguilar-Ramos, this court's role was simply to determine if there were evidence, if there were errors made in the agency's analysis. And as in Parada, there is a significant and material disconnect between the evidence and the record and what the IJ observed and then the IJ's conclusions. And part of the reason for that is that the IJ here misapplied JFF and only focused on torture that could result from these monitoring and reporting requirements. And I understand your Honor's question to be just what evidence in the record does compel. And I think looking at the expert testimony, the country conditions reports in combination with Mr. Ramirez's testimony does compel the finding. But the greater point and what we're asking this court to do is to look to the evidence. Counsel, if I may interject a question, please. So I understand that in arguing that the 50% likelihood that Judge Clifton's been asking about is made out, you've argued can be by aggregate of all the people who could torture him. So he could be tortured by the government directly. He could be tortured by a death squad acting on the government's orders or acting independently. He could be tortured by the 18th Street gang members who view him as a rival or potential rival. But to the extent it's non-governmental actors who'd be doing the torturing, what's the best evidence you have in the full record, including the country reports that the government would be willfully blind or acquiescent in such torture by non-governmental parties? Thank you for the question, Your Honor. First of all, with respect to both the findings for acquiescence to death squads and to gang violence here, the agency cited only half of the standard in Garcia Millan. It only cited half of the standard that supported its conclusion, but omitted the part of the standard that requires the agency to look at evidence of corruption or the government's unwillingness to prevent the kind of violence at issue. And so the evidence here, I would point to for acquiescence to death squads in particular, the United Nations June 2018 report showing that while there had been some investigations into police misconduct, 93 percent had been dismissed at the early stages and judges have never convicted security personnel for involvement in extrajudicial killings. Also, 41 internal investigations into police involvement involved one or more people who had been sanctioned, so that is strong evidence of an unwillingness and a willful blindness to killing by the police. And then as to gangs, there was evidence in the record or there was expert testimony, particularly from Sonia Luna Guzman, explaining that the police are corrupt, that they are corrupt, that the police will not choose to protect Mr. Ramirez. And with that, I will preserve the remainder of my time. OK, thank you, counsel. I will now proceed to the argument by the government. Thank you, Your Honor, and may it please the court. My name is Richard Kelly representing the attorney general. The record does not compel the conclusion that petitioner would more likely than not be tortured by the Salvadoran government or by anyone else with its consent or acquiescence. First, I just want to respond to some of the points brought up by the petitioner. He argues that there is evidence that the IJ ignored, however, such as he specifically points to the Guzman affidavit says there's other evidence of acquiescence. However, the standard is a plain statement by the agency stating that it considered the evidence is generally sufficient to show that it considered it absent evidence that there is something potentially so potentially dispositive in the record that the board or agency didn't consider here. I think as in our brief, we we know that there's really nothing in the record that would compel an opposite conclusion. Sure, we are not arguing that there's no evidence that he wouldn't be tortured. However, that's not the standard. He has to show that the record compels the conclusion. It's not enough to show that there's contradictory evidence in the record. I think many of the court's cases say that, in particular, Ortega vs. Mukasey, Delci-Marraquin vs. Lynch. They all say that this is a high standard that the petitioner has to meet and generally wouldn't be able to do that with just citing to evidence that there is some risk, but not a more than 50 percent risk. In addition, could I ask you to address the issue raised by Judge Gould's question that specifically that when the IJ went through the threat of torture from different possible sources, as I read the decision, the IJ said he's not more likely than not to be tortured by the government. He's not more likely than not to be tortured by MS-13 and so on. But of course, that could all be true. But the aggregate possibility of torture from taking into account all sources could be more likely than not. And what I what I wasn't sure of is where the IJ considered that aggregate possibility of torture and determined that it was less than 50 percent. So can you address that, please? Yes, Your Honor. The petitioner raised that exact argument to the board. So what the board pointed to was on page 147 of the record, the last essentially paragraph of the IJ's decision, the IJ explicitly stated, taking into account all of the evidence in the record, the court finds that respondent has failed to meet his burden of proof. So this was after he did a thorough analysis of each source of torture that he was claiming. And the court has always has held that that is enough. If the agency advances consideration of all the issues and then concludes with a statement, that is enough to separate it from the line of authority that petitioner pointed to in his brief. For example, he said a Cajada Aguilar versus Lynch. However, in that case, the board failed to consider a whole source of torture. So there was no analysis on a source of torture, which the petitioner in that case was arguing he would be tortured because of his familial ties. However, there was no analysis on that issue. However, in this case, I think it should be clear, hopefully, that the IJ went through each source and all his arguments and supported his analysis with evidence in the record. So that is all that really the court has required. In terms of aggregate risk, I also want to I know we filed a 28-J letter and Ming Dai versus Sessions, or sorry, Garland versus Ming Dai. And in that case, it's important to note that even if the petitions are found credible, even if their experts are found credible, the board and the agency is not required to accept that evidence as persuasive, true or legally sufficient. And here, I think the IJ explained why he wasn't relying on the expert or explained the limitations of Dr. Hallett's testimony, particularly in regards to the government-based claim. In addition, the petitioner brings up the Guzman affidavit. But I think our brief explains basically that that affidavit was not potentially dispositive because it was duplicative of other evidence in the record that basically said that it's dangerous to be a gang member, essentially, in El Salvador. However, again, all parts of that affidavit actually supports respondents' position in that it points to assistance for the government towards criminal deportees. And I think the special reporter's report as well demonstrates that the government is intent on assisting deportees. She says that the government assists 52,000 deportees per year on page 1270. So I think there is substantial evidence regarding whether there is government acquiescence in any torture that would happen. The petitioner also stated that he's not similarly situated to the other 60,000 members who were described in the country reports. I would argue that is correct, but for the wrong reasons. I don't think he's similarly situated because he's not an active gang member. Those reports sort of imply that most of these gang member deaths are happening in the Correct, there is, the IJ did recognize evidence of potential extrajudicial killings, and he acknowledged that evidence. But I think on balance, he weighed all the evidence in record and found that he didn't meet his more likely than not burden. And then finally, the petitioner points to evidence of acquiescence. But again, based on the evidence we cited in our brief, there's substantial evidence supporting the agency's acquiescence findings, particularly with death squads. There's evidence he cited that the agency is combating or sorry, the government is combating those abuses. He said to the country report, there's also squads are a little tricky, because to the extent that they're composed of government employees themselves. It's not that our law doesn't recognize the possibility of rogue officers, but this is more substantial than a single corrupt police officer. So I'm not sure how, how, how rigid the requirement for government acquiescence is when the government itself is the one that's doing the dirty work. I don't know if there's something else you have to say about that, but I'd be wary of trying to separate out the death squads as being as if they were free agents or non governmental because they're not. Yes, Your Honor, I just want to clarify. So the, this is in a matter of JFF analysis. So the death squads was, was analyzed in the context of whether the police would share his information collected through the decree with the death squads. So that was the last one of the last steps in his JFF analysis. So he essentially found that there was no record of him showing kind of how, what mechanism that would happen, how the police share this and would share allegedly this information. So in terms of acquiescence, I think the board was, was sort of pointing to that and saying, look, the government, there's no evidence the government is handing these people over to death squads. There is evidence the government, there are, you know, several reports of death squads. However, it wasn't clear as to, there wasn't any established mechanism for the government's at least the national government's or the PNC's official implication in that sort of violence. I also want to quickly address the petitioner's insistence that the IJ solely focused on Decree 717. This is belied by the record. The IJ specifically acknowledged that suspected gang members are often subject to abuse and killings. That's on page 145. The board agreed and, and, and stated that he reviewed all that evidence. The IJ cited several articles in the record, including Dr. Hallett's testimony, stating that people with his characteristics, criminal history tattoos would be subject, would have a greater risk of extrajudicial killings. But he found ultimately that he failed to prove the hypothetical chain of events leading to his torture. Counsel, if I could interject a question, please. Does the record disclose whether or the extent to which the El Salvadorian government discloses the responses under Decree 717 to the public, or if they keep that information confidential or sealed? Yes, Your Honor. In our brief, we cite to the only information in the record is an express confidentiality provision in the decree that says you can't share the information, right? So this information is not public. And when asked, Dr. Hallett did not describe any mechanism as to how, who, who would have access to this information. It was all kind of just speculation. When she was drilled down, she ultimately admitted she didn't know a lot of details about the implementation of the decree. The last thing I just want to address is petitioners' reliance on Prada versus Sessions. In that case, the agency denied the CAC claim in a conclusory manner by just pretty much just copy and pasting the legal standard. In fact, the court actually reprints the whole section, which is about two sentences, where the IJ denied the CAC claim. However, here, I think this is a much more detailed opinion. It's not a similar case. I don't think we can really draw comparisons to that in terms of the agency's consideration of the underlying facts. There is one piece of the 2019 BIA decision that really caught my eye, and this may be more, I'd be curious if you have any reaction to it. It might be more of an observation, but I think all court of appeals judges are aware of, but rarely actually use the famous quotation from the Seventh Circuit about a five-week old fish as being the standard for what's clearly erroneous. I got to say, in practical terms, that's not the standard. When I see references to that, it's a suggestion to me, in this case, a statement by the BIA that, oh, they got a hard case on their hands as they want to push the bar so low that you couldn't possibly trip over it. But I'll go ahead and ask, I guess, since this is supposed to be in the form of a question, so I'll pretend we're playing Jeopardy here, and I want it in the form of a question to what is your take, or what is your office's take on whether that's a fair expression of the clearly erroneous standard that's supposed to be applied by the BIA? Do you think that's really the standard? No, Your Honor. I don't think that is the prevalent standard among the board members. I couldn't really tell you why that case was cited. However, I guess I would point to the most recent decision, granting reconsideration, did state that it reviewed it for clear error, and I don't think, and they didn't cite to that standard. Yeah, but I think the important thing is the judge's findings were all supported by record evidence as we point to our brief. So even if they didn't quite get that recitation of that standard right, I don't think anything in the IJ's opinion would, is clearly erroneous under any standard. So if Your Honors have no further questions, I would ask the court to deny the petition for review and rest on the remaining arguments in our briefs. Thank you. Thank you, Counselor. Judge Clifton, Judge Miller, any questions? No. Hearing none, that argument is concluded. I meant the argument of the government, and the petitioner does have some rebuttal time. Thank you, Your Honor. Just briefly, a couple of points. Parada was a cat claim, and so we would ask that precedent be considered in adjudication here. I would highlight one more time just the fact that Mr. Ramirez was threatened 11 times by the 18th Street gang, that the threats were severe, including his mother being held by gunpoint, and that it was close in time to his hearing. The last one was up to, it was just two months prior to his final merits hearing. And this was evidence that was completely ignored by the IJ. And so we'd like, in this case, to associate behind me as the bar, which... Well, let me stop you there. What do you mean completely ignored? Because the IJ, I thought, talked specifically about the person from whom the threats came. Am I wrong about that? He did not address the other threats. And it's not necessarily the case that the same person, that it's the same 18th Street gang member who is making all of the threats. Well, the paragraph I'm looking at begins by acknowledging respondent, which is, in this case, your client. Next, alleges he faces torture death at the hands of the 18th Street gang because the gang is a rival to MS-13, so on and so forth. Goes on to talk about respondent specifically fears one gang member and talks at some length about it. And concludes by saying, based on the record, respondent has not established that he more likely than not faces a particularized risk of torture at the hands of Mera 18. So you just told me he ignored it. That doesn't look like ignorance to me. It looks like a decision to the contrary. He ignored all of the initial threats, Your Honor. The only threat that the judge addressed was the final threat from one individual who identified as the devil with seven lives. But he ignored the fact that there were letters submitted in the evidence packets from his family members stating that they had been threatened, including his mother and his aunt and other relatives. And so the fact that the IJ failed to even consider 10 other... Stop. Stop right there. You said failed to consider. The most you could fairly say, and I don't agree with this assessment, is it failed to specifically discussed. Those are different things. But I think he even discussed the others in that paragraph. So there you have it. But let me ask the question then. Is considered the same as discussed? If a particular piece of evidence isn't discussed, are you free to conclude it was never considered? It's not necessarily the same, Your Honor. And it's possible that it was considered but not discussed. But we submit that it's highly probative evidence in light of this court's precedent in Sochiba Jaime's bar that the court failed to consider and that that was error that is reversible. The agency erred in failing to consider that and in failing to consider all of the risks together in the aggregate. In the end, a mere statement that all evidence in the record was considered is not a statement that the agency actually considered what it's going to be for Mr. Ramirez to have to go back to El Salvador and face all of these different places at the same time. And with that, I will rest. And state that based on the errors we've identified at argument today and in our briefs, we ask that the agency reverse the decision or that this court reverse the agency's decision. Thank you. Okay, I thank you for your argument. That case, Ramirez v. Scarlin, shall now be submitted and the panel will hear from us in due course on that. We have two more cases to be argued today, but the panel will now take a 15-minute break before proceeding with the Western Watersheds Project and the Montana Wildlife Federation cases. All rise. This court stands in recess for 15 minutes.
judges: Gould, Clifton, Miller